# SUPERIOR COURT

## OF THE

# STATE OF DELAWARE

Jeffrey J Clark
Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
302-735-2111

July 24, 2017

Gregory Babowal, DAG
Department of Justice
102 West Water Street
Dover, DE 19904

Gary E. Junge, Esq.
Schmittinger & Rodriquez, P.A.
414 South State Street
P. O. Box 497
Dover, DE 19903

RE:   *IN THE MATTER OF:  Omar Holloman - $10,000 in U.S. Currency*
      *C.A. No. K17M-01-013 JJC*

Submitted:  July 21, 2017
Decided:  July 24, 2017

Counsel:

This letter sets forth the Court's decision, after a bench trial, regarding Petitioner Omar Holloman's (hereinafter "Mr. Holloman's") petition for return of property, consisting of $10,000, seized by the Harrington Police Department on November 1, 2016. The police seized the money from a backpack in his vehicle's trunk. Prior to the seizure, a Harrington officer stopped Mr. Holloman for a seat belt violation. The officer suspected that Mr. Holloman was engaged in drug activity and accordingly requested that a canine officer come to the scene to screen his car for drugs. Thereafter, the dog alerted for the presence of drugs. After searching Mr. Holloman's car, officers found money, but found no drugs or drug paraphernalia.

An ion scan of the money revealed cocaine residue, thus engendering this forfeiture action pursuant to 16 *Del. C*. § 4784.

The primary dispute at trial was whether the allegedly prolonged detention at the scene constituted a separate seizure apart from the initial stop for the seat belt violation. Mr. Holloman argues that United States Constitutional Fourth Amendment Search and Seizure analysis applies in the context of civil forfeiture actions and should be considered in this context pursuant to his motion *in limine* in the same vein as the Court would consider a motion to suppress in the criminal setting. The parties identified no Delaware case law examining this issue and the Court located none.

In this case, the Court elects not to address Mr. Holloman's argument that, at the outset, all evidence in this matter be excluded. The Court declines to do so because the statute separately and organically provides for a search and seizure analysis that permits a petitioner to recover seized property if he or she establishes that a seizure was illegal. The Court finds, after considering all of the evidence presented at trial, that Mr. Holloman met the statutory burden of demonstrating an illegal seizure. After considering the evidence presented at trial, the Court also finds that Mr. Holloman had a lawful possessory interest in the property at issue. Accordingly, the State must return the $10,000 in seized funds to him.

**Findings of Fact**

The Court finds the following facts, presented at trial, to a preponderance of the evidence. On November 1, 2016, Mr. Holloman drove his Virginia registered vehicle through Harrington and was stopped by a Harrington officer for not wearing his seat belt. The officer noticed he was in a Virginia tagged vehicle, and that there was no luggage in his back seat. Furthermore, the officer asked Mr. Holloman about

2

his destination, and he responded that it was "up the road" but then refused to provide additional information.

At that point, the officer returned to his vehicle for a few minutes to run Mr. Holloman's information. Upon concluding what, in the officer's concession, was a sufficient inquiry to issue the seat belt violation, the officer returned to Mr. Holloman's car and told him to exit the vehicle. Mr. Holloman complied but then the officer and Mr. Holloman argued about the purpose of his continued detention. The officer informed Mr. Holloman that he had called for a K-9 unit to screen his vehicle and, in the officer's words, told Mr. Holloman that he was now being detained "on my time."

Within a few additional minutes, the K-9 unit appeared on site and the dog alerted twice on the vehicle. A search ensued and revealed no drugs or drug paraphernalia. Additionally, the State presented no evidence that Mr. Holloman was charged with any criminal activity other than the seat belt violation. The police, however, located $10,000 in cash in a backpack in Mr. Holloman's trunk. Thereafter, the Harrington police department transported the cash to a Delaware National Guard non-commissioned officer who performed an ion scan. The scan revealed that the money was contaminated with cocaine.

At trial, Mr. Holloman testified that his mother gave him the money for purposes of investing in property and that he was in the process of looking for properties in Philadelphia when the police officer stopped him. His mother also testified and corroborated his testimony. However, the Court finds that statements in his petition were somewhat inconsistent because he wrote that he earned the money through other legitimate means.

3

## Standards for this Civil Forfeiture Proceeding

This civil forfeiture matter is governed by the provisions of 16 *Del. C.* § 4784. In a civil forfeiture proceeding, the State has the initial burden of proving probable cause.[1] If the State meets this burden, then the burden shifts to the petitioner to rebut the presumption of forfeiture.[2] To rebut this presumption, the petitioner must prove that (1) he or she has a possessory interest in the property, and (2) the property was unlawfully seized or was not subject to forfeiture pursuant to this section.[3]

Mr. Holloman incorrectly argues that the "probable cause" burden placed upon the State refers to the State's burden to show that there was probable cause for the search. The probable cause reference, however, as far as the initial burden is concerned focuses on whether the State has established probable cause, meaning a fair probability, that one of the itemized purposes for forfeiture outlined in subsection (a) are met.[4] Separately, the reference to "unlawfully seized" in the portion of the statute placing the burden upon the petitioner to prove an illegal seizure cannot be reasonably read to reference anything other than an analysis regarding Fourth Amendment search and seizure law, as well as that of Article I,

---

[1] *Brown v. State*, 721 A.2d 1263, 1265 (Del. 1998).

[2] *Id.*

[3] 16 *Del. C.* § 4784(j).

[4] The Court acknowledges the authority cited by Mr. Holloman regarding the applicability of search and seizure law, and as a consequence the application of the exclusionary rule regarding any evidence supporting forfeiture that followed the search. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 702 (1965) (holding that the exclusionary rule is applicable to civil forfeiture proceedings because they are quasi-criminal in nature). The Court, however, declines to address the issue in the pre-trial context. There is a notable inconsistency regarding search and seizure analysis in the pre-trial criminal context compared to the requirements of the relevant statute. Namely, the burden of proof is on the State for a warrantless seizure. On the other hand, 16 Del.C. § 4784(j) squarely places the burden on the petitioner to show that the seizure was unlawful. For the reasons that follow, Mr. Holloman met the burden placed upon him by the statute for showing the seizure was unlawful, and therefore, the Court declines to further address the constitutionality of the statute's burden shifting.

4

Section 6 of the Delaware Constitution and other Delaware statutes applicable to searches and seizures.

## Discussion

At the outset, the Court finds that the State presented sufficient evidence to meet its initial burden regarding probable cause that the money was subject to forfeiture because it was found to contain "trace amounts of controlled substances . . ."[5] The State presented expert testimony from the operator of an ion scanner, and presented a report indicating the same. While Mr. Holloman argued, after his cross-examination of the expert, that the Court should strike his opinion and report, both the expert's testimony and the ion scan report had already been admitted into evidence without objection. The expert was somewhat unfamiliar with aspects of the equipment and aspects of the report other than the test's conclusions. However, when evaluating probable cause to believe that trace amounts of cocaine were found on the money, the Court is satisfied that the results of the ion scan establish that there was at a minimum, probable cause to believe that the money contained trace amounts of cocaine.

With regard to the whether Mr. Holloman had a lawful possessory interest in the property, the Court finds that he has met his burden by a preponderance of the evidence. The Court acknowledges the partial inconsistency in his testimony regarding whether the money came from his mother or his various business interests. Nevertheless, the only testimony regarding its origin came from Mr. Holloman and his mother. The money was located in a backpack in his car, and that he professed two overlapping origins for the money, does not lead the Court to conclude anything other than that he had a lawful possessory interest in the money seized.

---

[5] 16 *Del. C.* § 4784(a)(7)b.

5

The central issue in this case involves Mr. Holloman's argument that the seizure was unlawful. Primarily, he challenges the length of the stop arguing that it exceeded the length necessary to conclude a seat belt violation investigation. A traffic stop by the police is justified where there is a reasonable, articulable suspicion of criminal activity, and the stop must be reasonable in its scope.[6] Delaware courts define reasonable, articulable suspicion as an officer's ability to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts.[7]

Additionally, "the duration and scope of the traffic stop must last only as long as reasonably necessary to effectuate the purpose of the stop, at which point the legitimate investigative purpose of the traffic stop is completed."[8] Accordingly, "any investigation of the vehicle or its occupants beyond that required to complete the purpose of the [initial] stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion."[9]

Here, the parties did not dispute the legality of the initial stop of the vehicle for a seat belt violation. In evaluating the matter after that point in time, the Court reviewed the videotape and considered the testimony of the officer. Namely, the arresting officer testified that he received all the information necessary to issue a

---

[6] *State v. Ward*, 2016 WL 4717983, at *2 (Del. Super. Ct. Sept. 8, 2016) (citation omitted).

[7] *State v. Chandler*, 132 A.3d 133, 141 (Del. Super. Ct. 2016).

[8] *Id.* at 142.

[9] *Caldwell v. State*, 780 A.2d 1037, 1047 (Del. 2001).

6

seat belt violation and then returned to Mr. Holloman's vehicle. At that point, he ordered Mr. Holloman out of his vehicle, and detained him for several more minutes, patted Mr. Holloman down, and then directed him to await the arrival of the K-9 officer. Accordingly, the Court finds that, in this case, the officer measurably extended the stop beyond that which was necessary to complete the traffic violation investigation, which violated Mr. Holloman's constitutional rights.[10]

The Court has considered the argument of the State that overlapping investigations can occur, which, given the right circumstances, can be valid. Namely, a contemporaneous K-9 screen can be valid if it is done within the time frame of a valid Title 21 stop. This case, however, turns on the fact that the officer measurably extended the stop at issue here beyond the time necessary for the officer to write a seat belt citation. The officer testified that, after leaving his car the second time, he possessed all the information necessary to write the seat belt citation. Despite this, he ordered Mr. Holloman out of his car and stated that "you are on my time." The officer's time standard, however, was not in accordance with Federal or State constitutional requirements unless supported by a reasonable, articulable suspicion of criminal activity other than the seat belt violation.

Since the officer measurably extended the stop, for it to be lawful, it must have been supported by reasonable, articulable suspicion of additional criminal activity. The State argues that the officer did in fact have reasonable, articulable suspicion to extend the scope of the investigation and cites the following facts in support of this argument: Mr. Holloman was (1) vague regarding his destination; (2) his car was registered in Virginia; and (3) the officer could see no luggage in the passenger compartment of the car. No other facts were cited in support of reasonable

---

[10] *See Rodriguez v. United States*, 135 S.Ct. 1609, 1612 (2015) (holding that when a traffic stop exceeds the time ordinarily needed to complete the matter of the stop, it is a constitutional violation).

7

articulable suspicion of additional criminal activity. In this case, this evidence leads the Court to conclude that the investigating officer did not have reasonable, articulable suspicion to extend the stop and instead acted on no more than a hunch. Mr. Holloman accordingly has met the statutory burden of proving to a preponderance of the evidence that the stop was unlawful. It therefore follows that his petition to recover the $10,000 seized in this case should be granted. Mr. Holloman's petition is GRANTED, and the State shall return the funds to him as soon as practicable. Since Mr. Holloman is the prevailing party, costs are awarded to him as the Petitioner.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark

JJC:jb
*Via File & Serve Xpress*

8